IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLLS-ROYCE CORPORATION<br>450 S. Meridian St.<br>Indianapolis, Indiana 46225;<br><br>and<br><br>AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, as Subrogee of ROLLS-ROYCE CORPORATION<br>1299 Zurich Way<br>Schaumburg, Illinois 60196<br><br>    **Plaintiffs,**<br><br>v.<br><br>GHAFARI ASSOCIATES, LLC<br>17101 Michigan Ave.<br>Dearborn, Michigan  48126<br><br>    **Defendant.** | **Case No:** 1:22-cv-10681 |

## COMPLAINT

NOW COME the Plaintiffs, Rolls-Royce Corporation and American Guarantee & Liability Insurance Company, as Subrogee of Rolls-Royce Corporation, by and through their counsel and for their Complaint against the Defendant, Ghafari Associates, LLC (hereinafter "Ghafari") state and allege as follows:

## PARTIES

1. Plaintiff, Rolls-Royce Corporation (hereinafter "Rolls-Royce"), is a Delaware corporation with a principal place of business located at 450 South Meridian Street in Indianapolis, Indiana, 46225.

1

2. Plaintiff, American Guarantee & Liability Insurance Company, as Subrogee of Rolls-Royce Corporation (hereinafter "AGLIC"), is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196. AGLIC is authorized to transact business and has transacted business in the State of Indiana.

3. At all times relevant, AGLIC insured the property of Rolls-Royce under a policy of insurance, No. MCP-3733820-19 with effective dates from December 1, 2020 to December 1, 2022 ("the Policy").

4. Defendant, Ghafari Associates, LLC (hereinafter "Ghafari") is a Michigan limited liability company with its principal place of business at 17101 Michigan Avenue, Dearborn, Michigan, and does business in a systematic and continuous manner within the State of Indiana, among other places.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action under 28 U.S.C. §1332(a) because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. Ghafari contracted with Rolls-Royce and consented to personal jurisdiction and venue in the State of New York. Specifically, Section 29 of the General Conditions of Purchase incorporated into Rolls-Royce's Purchase Order to Ghafari (Copies of which are attached hereto as Exhibits A and B), which was accepted by Ghafari, provides in pertinent part as follows:

> 29. **GOVERNING LAW**: The Procurement Conditions and any claim, controversy or dispute arising under or related to the Procurement Conditions, the relationship of the parties, or the interpretation and enforcement of the rights and duties of the parties

will be governed by the laws of the State of New York without regard to conflicts of law principles. **[Ghafari] consents to the jurisdiction of New York courts**. Any action arising out of or relating to the Procurement Conditions will be brought in the State of New York. The application of the United Nations Convention for International Sale of Goods dated April 11th 1980, is hereby expressly excluded.

7. Venue is proper pursuant the Section 29 of the General Conditions of Purchase of Rolls-Royce's Purchase Order to Ghafari under which Ghafari agreed to submit to jurisdiction and venue in the State of New York, USA.

## NATURE OF THE DISPUTE

8. Rolls-Royce is a manufacturer of power and propulsion solutions in the aerospace, naval marine, energy and off-highway applications and operates a manufacturing, assembly, testing and engineering facility at 2359 South Tibbs Avenue in Indianapolis, Indiana ("the Rolls-Royce Plant").

9. On or around September 29, 2015, Rolls-Royce entered into a Design Build contract with Pepper Construction Company of Indiana, LLC ("Pepper") for the design and construction of improvements to the Rolls-Royce Plant, which project was referred to as Project Condor, the total value of which exceeded $600 million.

10. Subsequent to entering the Project Condor Design Build contract with Pepper, Rolls-Royce entered into a separate contract with Ghafari for the design of a cooling tower ("the Cooling Tower") to be incorporated into Project Condor which was to be constructed and installed by Pepper. (A copy of the contract between Rolls-Royce and Ghafari for the design of the Cooling Tower-hereinafter referred to as "the Design Contract"- is attached hereto as Exhibit A and incorporated herein.)

11. The Design Contract between Rolls-Royce and Ghafari for the design of the Cooling Tower incorporated, by reference, Rolls-Royce's General Conditions of Purchase. (A copy of Rolls-Royce's General Conditions of Purchase is attached hereto as Exhibit B.)

12. Section 6.2 of the General Conditions of Purchase provides that "[Ghafari] warrants that all Deliverables will conform to the Procurement Conditions and will be free from defects in material, workmanship and, if [Ghafari] has responsibility for design, [Ghafari] further warrants that all Deliverables will be free from defects in design." (Exhibit B, Section 6.2).

13. The "Deliverable" referenced in Section 6.2 of Rolls-Royce's General Conditions of Purchase was the design of the Cooling Tower, including the "Sequence of Operation."

14. Prior to December 20, 2020, Pepper completed construction of the Cooling Tower in accordance with Ghafari's design and it was placed into operation by Rolls-Royce.

15. On or about December 20, 2020, water in the Cooling Tower froze during foreseeable cold weather causing ruptures in its tubes and other components. (Hereinafter "the December 2020 Loss").

16. Rolls-Royce submitted a claim to AGLIC in the amount of $1,252,560.10 for the damage it incurred as a result of the December 2020 Loss.

17. Pursuant to its obligations under the Policy, AGLIC paid Rolls-Royce $1,188,060.10 after applying its $64,500.00 deductible.

18. As a result of and to the extent of its payment to Rolls-Royce for the damage incurred in the December 2020 Loss, AGLIC is subrogated to its right of recovery against any potentially responsible third-party, including Ghafari.

19. Following the December 2020 Loss, Ghafari agreed to provide professional services to assist in determining the cause of the December 2020 Loss and to design a repair to

the Cooling Tower that would prevent the water in the system from freezing again in the future, including during anticipated winter shutdowns.  (The letter in which Ghafari agreed to provide the referenced services following the December 2020 Loss-hereinafter referred to as "the Repair Contract"- is attached hereto as Exhibit C and incorporated herein.)

20. Ghafari agreed in the Repair Contract to extend Rolls-Royce's General Conditions of Purchase to the Repair Contract. (Exhibit C, p. 3).

21. Section 6.2 of the General Conditions of Purchase for the repair following the December 2020 Loss provides that "[Ghafari] warrants that all Deliverables will conform to the Procurement Conditions and will be free from defects in material, workmanship and, if [Ghafari] has responsibility for design, [Ghafari] further warrants that all Deliverables will be free from defects in design." (Exhibit B, Section 6.2)

22. The "Deliverable" referenced in Section 6.2 of Rolls-Royce's General Conditions of Purchase was the design of the Cooling Tower repairs to avoid a repeat of the foreseeable freeze of the water in the system during foreseeable cold weather.

23. Following the December 2020 Loss and prior to January 6, 2022, Pepper and its subcontractors performed the repairs of the Cooling Tower that had been designed by Ghafari.

24. On or about January 6, 2020, water in the Cooling Tower froze once again during foreseeable cold weather causing ruptures in its tubes and other components. (Hereinafter "the January 2022 Loss")

25. Rolls-Royce submitted a claim to AGLIC for $1,338,123.60 for the damages incurred in the January 2022 Loss.

26.  Pursuant to its obligations under the Policy, AGLIC paid Rolls-Royce $1,259,123.60 after applying its $69,000 deductible.

27. As a result of and to the extent of its payment to Rolls-Royce following the January 2022 Loss, AGLIC is subrogated to its right of recovery against any potentially responsible third-party, including Ghafari.

## COUNT I
## BREACH OF CONTRACT/EXPRESS WARRANTY FOR THE DECEMBER 2020 LOSS

28. Plaintiffs, Rolls-Royce and AGLIC incorporate by reference the allegations contained in paragraphs 1 – 27 as if fully rewritten herein.

29. Rolls-Royce and Ghafari had a valid contract that was evidenced by, among other things, the Design Contract and General Conditions of Purchase issued by Rolls-Royce to Ghafari. (Exhibits A and B.)

30. Pursuant to the General Conditions of Purchase incorporated into the Design Contract, Ghafari expressly warranted that its design of the Cooling Tower would be free of defects. (Exhibit B at Section 6.2)

31. The Design Contract between Rolls-Royce and Ghafari was entered into for valid consideration, i.e. the payment of a fee of $55,000.00.

32. Rolls-Royce fully performed all of its duties and obligations under the Design Contract.

33. The December 2020 Loss was the direct and proximate result of a defective design of the Cooling Tower in that, among other things:

   a. The sequence of operation specified by Ghafari required that no flow be present through the coils before draining occurred, placing the system at risk;

   b. The design contradicted recommended practices by Marley Engineered Products by draining galvanized tubes, which was a highlighted caution in the Marley published Document No. Z0902512_B, "MH Fluid Cooler Installation-Operations-Maintenance" (IOM), as it would cause corrosion;

    c.      The design contradicted manufacturer recommendations regarding control temperatures for preventing freezing;

    d.      The design failed to account for foreseeable ambient freezing temperatures paired with shutdowns by Rolls-Royce; and

    e.      It otherwise failed to include an adequate freeze protection plan.

34.      All damages, including the property damage, business losses and legal fees and costs of Rolls-Royce arising from the December 2020 Loss were proximately caused by Ghafari's breach of the Design Contract, including its express warranty to Rolls-Royce as set forth herein.

35.      As a direct and proximate result of the foregoing, Plaintiff's Rolls-Royce Corporation and American Guarantee & Liability Insurance Company as subrogee of Rolls-Royce Corporation Demand judgment in their favor and against the Defendant, Ghafari Associates, LLC, in the amount of $1,252,560.10 together with pre-judgment and post judgment interest, attorney's fees and costs and any other relief this Court deems just and appropriate.

**COUNT II**
**BREACH OF CONTRACT/EXPRESS WARRANTY FOR THE JANUARY 2022 LOSS**

28.      Plaintiffs, Rolls-Royce and AGLIC incorporate by reference the allegations contained in paragraphs 1 – 27 as if fully rewritten herein.

29.      Rolls-Royce and Ghafari had a valid contract for Ghafari to design the repair of the Cooling Tower following the December 2020 Loss that was evidenced by, among other things, the Repair Contract and General Conditions of Purchase issued by Rolls-Royce to Ghafari.  (Exhibits C and B.)

30. Pursuant to the General Conditions of Purchase incorporated into the Repair Contract Ghafari expressly warranted that its design of the Cooling Tower repairs following the December 2020 Loss would be free of defects. (Exhibit B at Section 6.2)

31. The Repair Contract between Rolls-Royce and Ghafari was entered into for valid consideration.

32. Rolls-Royce fully performed all of its duties and obligations under the Repair Contract.

33. The January 2022 Loss was the result of a defective design of the Cooling Tower repairs following the December 2020 Loss in that:

   a. The sequence of operation specified by Ghafari required that no flow be present through the coils before draining occurred, placing the system at risk;

   b. The design contradicted recommended practices by Marley Engineered Products by draining galvanized tubes, which was a highlighted caution in the Marley published Document No. Z0902512_B, "MH Fluid Cooler Installation-Operations-Maintenance" (IOM), as it would cause corrosion;

   c. The design contradicted manufacturer recommendations regarding control temperatures for preventing freezing;

   d. The design failed to account for foreseeable ambient freezing temperatures paired with shutdowns by Rolls-Royce; and

   e. It otherwise failed to include an adequate freeze protection plan.

34. All damages, including the property damage, business losses and legal fees and costs of Rolls-Royce arising from the January 2022 Loss were proximately caused by Ghafari's breach of the Repair Contract, including its express warranty to Rolls-Royce as set forth herein.

35. As a direct and proximate result of the foregoing, Plaintiff's Rolls-Royce Corporation and American Guarantee & Liability Insurance Company as subrogee of Rolls-Royce Corporation Demand judgment in their favor and against the Defendant, Ghafari

Associates, LLC, in the amount of $1,188,060.10 together with pre-judgment and post judgment interest, attorney's fees and costs and any other relief this Court deems just and appropriate.

### COUNT III
### NEGLIGENCE FOR THE DECEMBER 2020 LOSS

28.  Plaintiffs, Rolls-Royce and AGLIC incorporate by reference the allegations contained in paragraphs 1 – 27 as if fully rewritten herein.

29.  At all times relevant and prior to December 20, 2020, Ghafari owed a duty to Rolls-Royce to use reasonable care and caution in the design of the Cooling Tower.

30.  Notwithstanding the aforementioned duty and in breach thereof, Ghafari was careless and negligent in one or more of the following ways:

   a.  The sequence of operation specified by Ghafari required that no flow be present through the coils before draining occurred, placing the system at risk;

   b.  The design contradicted recommended practices by Marley Engineered Products by draining galvanized tubes, which was a highlighted caution in the Marley published Document No. Z0902512_B, "MH Fluid Cooler Installation-Operations-Maintenance" (IOM), as it would cause corrosion;

   c.  The design contradicted manufacturer recommendations regarding control temperatures for preventing freezing;

   d.  The design failed to account for foreseeable ambient freezing temperatures paired with shutdowns by Rolls-Royce; and

   e.  It otherwise failed to include an adequate freeze protection plan

31.  The December 2020 Loss was the direct and proximate result of a Ghafari's negligent design of the Cooling Tower and incurred damages in the amount of $1,252,560.10.

32.  As a direct and proximate result of the foregoing, Plaintiff's Rolls-Royce Corporation and American Guarantee & Liability Insurance Company as subrogee of Rolls-Royce Corporation Demand judgment in their favor and against the Defendant, Ghafari

9

Associates, LLC, in the amount of $1,252,560.10 together with pre-judgment and post judgment interest, attorney's fees and costs and any other relief this Court deems just and appropriate.

## COUNT IV
## NEGLIGENCE FOR THE JANUARY 2022 LOSS

28. Plaintiffs, Rolls-Royce and AGLIC incorporate by reference the allegations contained in paragraphs 1 – 27 as if fully rewritten herein.

29. At all times relevant, including the time between December 20, 2020 and January 6, 2022, Ghafari had a duty to use reasonable care and caution in the design of the repairs to Cooling Tower.

30. Notwithstanding the aforementioned duty and in breach thereof, Ghafari was careless and negligent in one or more of the following ways:

   a. The sequence of operation specified by Ghafari required that no flow be present through the coils before draining occurred, placing the system at risk;

   b. The design contradicted recommended practices by Marley Engineered Products by draining galvanized tubes, which was a highlighted caution in the Marley published Document No. Z0902512_B, "MH Fluid Cooler Installation-Operations-Maintenance" (IOM), as it would cause corrosion;

   c. The design contradicted manufacturer recommendations regarding control temperatures for preventing freezing;

   d. The design failed to account for foreseeable ambient freezing temperatures paired with shutdowns by Rolls-Royce; and

   e. It otherwise failed to include an adequate freeze protection plan

31. The January 2022 Loss was the direct and proximate result of a Ghafari's negligent design of the repairs to the Cooling Tower as set forth above.

32. As a direct and proximate result of the foregoing, Plaintiff's Rolls-Royce Corporation and American Guarantee & Liability Insurance Company as subrogee of Rolls-Royce Corporation Demand judgment in their favor and against the Defendant, Ghafari

Associates, LLC, in the amount of $1,188,060.10 together with pre-judgment and post judgment interest, attorney's fees and costs and any other relief this Court deems just and appropriate.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

    A.    Judgment on Counts 1 and 3 against defendant Ghafari Associates, LLC, in the sum $1,252,560.10 and pre-judgment and post judgment interest;

    B.    Judgment on Counts 1 and 3 against defendant Ghafari Associates, LLC, in the sum $1,188,060.10 and pre-judgment and post judgment interest;

    C.    Awarding Plaintiff the costs of this action together with reasonable attorney's fees as permitted by contract or statute;

    D.    Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

McLaughlin & Stern, LLP

 /s/  Nelson E. Canter
Nelson E. Canter
McLaughlin & Stern, LLP
260 Madison Avenue
New York, N.Y. 10016
Tel.: (212)448-1100
Fax: (212)448-0066
Email: ncanter@mclaughlinstern.com

*Attorneys for Plaintiffs, Rolls-Royce Corporation and American Guarantee & Liability Insurance Company as Subrogee of Rolls-Royce Corporation*